IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Karsten O. Allen,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:19cv1477 (TSE/IDD)** |
| | ) | |
| **Benjamin T. Ulep, et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Karsten Allen, a Virginia inmate, filed a <u>pro se</u> civil action against two correctional

officers (Unit Manager Foreman and Lieutenant Adams) and four medical professionals (Dr.

Benjamin T. Ulep, Dr. Bomar, Nurse Butts, and Nurse Walker) at Sussex I State Prison, alleging

that each acted with deliberate indifference to his serious medical need in violation of his Eighth

Amendment right to be free from cruel and unusual punishment. [Dkt. No. 1]. On May 22, 2020,

defendants Foreman and Adams were dismissed, and the remaining four medical defendants

were served. The served defendants have filed a motion for summary judgment, which is

supported by exhibits and affidavits. [Dkt. Nos. 32, 33, 33-1 through 6]. Plaintiff has been

afforded the opportunity to file responsive materials pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d

309 (4th Cir. 1975), and has responded. [Dkt. No. 37-40]. Accordingly, this matter is now ripe

for disposition. For the reasons that follow, the defendants' motion for summary judgment must

be granted in part and denied in part.

The defendants are alleged to have been deliberately indifferent, primarily related to

Plaintiff's lower back pain. Most of the complaint concerns Defendant Dr. Ulep who Plaintiff

alleges refused to investigate the cause of the back pain, which persisted for over three years

once Dr. Ulep ruled out scoliosis as the cause of the pain. Plaintiff alleges Dr. Ulep was

deliberately indifferent as follows:

1. Deliberately indifferent to Plaintiff's back pain by refusing to send him to a
   specialist. [Dkt. No. 1 at 9]. Dr. Ulep's treatment of medication failed over a
   three-year period where Plaintiff's condition did not improve, and his refusal
   to send Plaintiff to a specialist delayed the discovery of Plaintiff's spinal
   stenosis. [Id. at 10];

2. Deliberately indifferent to Plaintiff's need for a shoe lift. [Id. at 9-10];

3. Deliberately indifferent to Plaintiff's need for a lower tier bunk. [Id. 9-10];
   and

4. Deliberately indifferent to Plaintiff's pain by refusing to prescribe any pain
   medications other than over the counter medications. [Id. at 10-11].

Plaintiff claims that Defendant Dr. Bomar was deliberately indifferent to plaintiff's serious

medical needs on July 17, 2019 and July 25, 2019, because Dr. Bomar refused to treat Plaintiff

or allow him to come to the medical department for treatment of his back pain. [Dkt. No. 1 at 7-

8, 11]. With respect to Defendant Nurse Butts, Plaintiff alleges that Nurse Butts was deliberately

indifferent to his serious medical need on August 23, 2019, when plaintiff claims that he was in

critical need of assistance for pain stemming from a recent epidural procedure (on August 22,

2019), and that Nurse Butts ignored his request for medical assistance. [Id. at 8, 11]. Lastly,

Plaintiff alleges that Defendant Nurse Walker was deliberately indifferent to his serious medical

need on August 26, 2019 because Nurse Walker ignored plaintiff's request for medical assistance

with the pain he was suffering from the August 22, 2019 epidural procedure. [Id. 8, 11-12].

## II. Statement of Undisputed Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a

statement of material facts that defendants contend are undisputed. In response, plaintiff

substantially complied with his obligations under those Rules by submitting statements of undisputed and disputed facts and included citations to the record. Accordingly, the following statement of uncontested facts is derived from a review of defendants' statement of undisputed facts, the nonmovant's response, and the record.[1]

      1. Dr. Ulep is a physician licensed to practice medicine in the Commonwealth of Virginia and was the Medical Director at Sussex I State Prison ("SISP") from 2015 until his departure and retirement on June 1, 2019. [Dkt. No. 33-5 at ¶¶ 1-2, 4].

      2. Dr. Bomar is a physician licensed to practice medicine in the Commonwealth of Virginia who began working at SISP on May 30, 2019, assuming the role of Medical Director from that time, until his departure from SISP on August 23, 2019. [Dkt. No. 33-4 at ¶¶ 1, 3].

      3. Nurse Butts is a licensed practical nurse licensed to practice in the Commonwealth of Virginia and was employed as a staff nurse at SISP from March 11, 2007 until August 25, 2020. [Dkt. No. 33-3 at ¶¶ 1, 3].

      4. Nurse Walker is a licensed practical nurse licensed to practice in the Commonwealth of Virginia who has been working at SISP since August 2016. [Dkt. No. 33-6 at ¶¶ 1, 3].

      5. Plaintiff was transferred from Buckingham Correctional Center to SISP on April 29, 2016. [Dkt. No. 33-1 at 1, 150].

      6. Plaintiff suffered from scoliosis and back pain prior to his arrival at SISP on April 29, 2016. [Id. at 1-2].

---

[1] The record in this case includes the defendants exhibits and affidavits [Dkt. Nos. 33-1 through 33-16], and Plaintiff's verified complaint, affidavit, and declaration. [Dkt. Nos. 1, 39, 40]. The Court notes that many of the medical records filed as exhibits by defendants are illegible (blurred or poor handwriting), or irrelevant to the time frame involved in the complaint.

7. Dr. Ulep first evaluated Plaintiff on June 16, 2016, where amongst other treatment noted in the medical record, spinal x-rays were ordered, and naproxen was prescribed for Plaintiff. [Dkt. No. 33-5 at ¶ 6; Dkt. No. 33-1 at 3].

8. On July 14, 2016, Dr. Ulep reviewed the spinal x-rays which he concluded were normal except for the presence of scoliosis which confirmed the earlier diagnosis. [Dkt. No. 33-5 at ¶ 7; Dkt. No. 33-1 at 4].

9. On August 19, 2016, Plaintiff made a request for a shoe lift but did not have a heel lifts or orthopedic shoes when he transferred to SISP. Dr. Ulep ordered additional x-rays to evaluate Plaintiff's pelvic tilt. [Dkt. No. 33-1 at 4].

10. On August 22, 2016, Plaintiff was scheduled for x-rays to evaluate pelvic tilt, but Plaintiff refused to have those x-rays taken. [Id. at 5].

11. On November 3, 2016, Dr. Ulep increased Plaintiff's medication and inquired as to the status of the x-rays he had ordered on August 19, 2016 which had yet to be completed. [Dkt. No. 33-5 at ¶ 8; Dkt. No. 33-1 at 6-7].

12. On November 16, 2016, the x-rays that had been ordered on August 19, 2019 were completed confirming dextro scoliosis of the lumbar spine with an unchanged pelvic tilt. [Dkt. No. 33-5 at ¶ 9; Dkt. No. 33-1 at 151].

13. Plaintiff was next seen on January 19, 2017 by another medical provider who noted Plaintiff had an intact gait without a limp, no spinal tenderness with good forward and backward bending. This medical provider diagnosed Plaintiff as having mild scoliosis, prescribed him Flexeril® and shoe inserts, and encouraged back exercises. [Dkt. No. 33-1 at 8].

14. On February 15, 2017, Plaintiff saw Dr. Ulep who opined that a spine clinic referral was not warranted and advised Plaintiff to continue with exercises and medications as previously ordered. [Dkt. No. 33-5 at ¶ 10; Dkt. No. 33-1 at 9].

15. On May 30, 2017, Plaintiff underwent electromyographic and nerve conduction velocity studies, ordered by Dr. Ulep.  Those studies disclosed no electrophysiological evidence of peripheral neuropathy or left lumbosacral radiculopathy. [Dkt. No. 33-5 at ¶ 13; Dkt. No. 33-1 at 14, 16, 141, 152-56].

16. On August 8, 2017, Dr. Ulep saw Plaintiff and told Plaintiff: (i) of the normal EMG results; (ii) that surgery would not alleviate Plaintiff's back pain and to continue with exercises; and (iii) that Plaintiff should continue with the recommended non-steroidal anti-inflammatory medication. [Dkt. No. 33-5 at ¶ 14; Dkt. No. 33-1 at 17-18].

17. From August 19-21, 2017, Plaintiff was placed in the medical unit for observation by Dr. Ulep. [Dkt. No. 33-5 at ¶ 15; Dkt. No. 33-1 at 20, 111].

18. On October 13, 2017, Dr. Ulep referred Plaintiff for an off-site physical therapy evaluation for back pain and leg length discrepancy, which was approved as an on-site evaluation. [Dkt. No. 33-5 at ¶ 16; Dkt. No. 33-1 at 21, 143].

19. Plaintiff was in physical therapy intermittently from December 21, 2017 to May 22, 2018 and it was noted that he had made minimal progress due to non-compliance and poor initiative following through with therapy recommendations. [Dkt. No. 33-5 at ¶¶ 16-17; Dkt. No. 33-1 at 21, 71, 75-78, 83, 87, 124-140, 143].

20. X-rays ordered of Plaintiff's lumbar spine by Dr. Ulep on January 13, 2018, showed no change from prior exams. [Dkt. No. 33-5 at ¶ 18; Dkt. No. 33-1 at 157].

21. On February 20, 2018, Dr. Ulep advised Plaintiff of the recent x-ray findings, re-prescribed Plaintiff's baclofen and advised Plaintiff to return for evaluation the week of March 12, 2018 if there was no improvement at which time Dr. Ulep would consider a referral to Medical College of Virginia ("MCV") Scoliosis Clinic for evaluation of leg-length discrepancy and possible orthotics. [Dkt. No. 33-5 at ¶ 19; Dkt. No. 33-1 at 25].

22. Plaintiff was seen by other medical providers or was prescribed medication on February 27, 2018, March 16, 2018, May 9, 15 and 31, 2018 and June13, 2018. [Dkt. No. 33-1 at 26-31].

23. On April 10, 2018 Plaintiff received a heel lift for right-sided leg length discrepancy from physical therapy. [Dkt. No. 33-5 at ¶ 20; Dkt. No. 33-1 at 135-36, 158].

24. On June 19, 2018, Dr. Ulep requested a referral for Plaintiff to be evaluated at the MCV Scoliosis Clinic. [Dkt. No. 33-5 at ¶ 21; Dkt. No. 33-1 at 32, 144].

25. On June 20, 2018, Dr. Ulep placed the MCV Scoliosis Clinic referral for Plaintiff on hold pending further evaluation in mid-July 2018 for treatment that had been instituted by another physician on May 31, 2018. [Dkt. No. 33-1 at 32].

26. Plaintiff was re-evaluated by various healthcare providers with treatment adjustments as noted on July 25, 2018, September 19, 2018, October 10 and 30, 2018, November 6, 2018, December 22, 2018, and February 20, 2019. [Dkt. No. 33-1 at 33, 36-39, 41].

27. On February 27, 2019, Dr. Ulep renewed Plaintiff's duloxetine prescription. [Id. at 41].

28. On March 12, 2019, Dr. Ulep ordered a non-contrast MRI of Plaintiff's spine that showed multilevel degenerative disease of the lumbosacral spine most prominent at the L2-L3

level with compression of the cauda equina and for which epidural steroid injections were recommended. [Dkt. No. 33-5 at ¶¶ 22-23, Dkt. No. 33-1 at 91, 159-163].

29. On March 19, 2019, Dr. Ulep reviewed the MRI results and subsequently made the referral request for Plaintiff's first epidural steroid injection that was administered on April 5, 2019. [Dkt. No. 33-5 at ¶¶ 24-25; Dkt. No. 33-1 at SA 41-43, 147].

30. On April 13, 2019, Plaintiff, complaining of onychomycosis,[2] was seen by a medical provider and Plaintiff was not noted to be in any distress on this occasion. [Dkt. No. 33-5 at ¶ 26; Dkt. No. 33-1 at 44].

31. On April 14, 2019 Plaintiff was seen by a medical provider at which time Plaintiff complained of continued back pain for which indomethacin was prescribed and a one-month follow-up was planned. [Dkt. No. 33-5 at ¶ 27; Dkt. No. 33-1 at 45].

32. On May 30, 2019, Dr. Bomar began work at SISP as the Medical Director. [Dkt. No. 33-4 at ¶ 1].

33. On June 1, 2019, Dr. Ulep retired from the full-time practice of medicine and left SISP and had no further involvement in Plaintiff's care. [Dkt. No. 33-1 at 5, 28].

34. Plaintiff was seen on June 20, 2019 by a nurse practitioner who requested that Plaintiff undergo another epidural steroid injection – which Plaintiff received in August 2019. [Dkt. No. 33-5 at ¶ 28; Dkt. No. 33-1 at 47, 148-49].

35. On July 17, 2019, Plaintiff saw Dr. Bomar at the SISP medical clinic and Plaintiff's prescriptions for duloxetine and acetaminophen were continued by Dr. Bomar. [Dkt. No. 33-4 at ¶ 8; Dkt. No. 33-1 at 48-49].

---

[2] A type of fungal nail infection.

36. On July 25, 2019, Plaintiff was seen by a nurse at the SISP medical clinic but Dr. Bomar did not evaluate Plaintiff on this occasion. [Dkt. No. 33-4 at ¶ 9; Dkt. No. 33-1 at 50].

37. On August 2, 2019, Plaintiff was re-evaluated in the SISP medical department by the nurse practitioner he had previously seen on June 20, 2019. [Dkt. No. 33-4 at ¶ 14; Dkt. No. 33-1 at 51].

38. On August 22, 2019, Dr. Bomar referred Plaintiff for the second epidural steroid injection. [Dkt. No. 33-4 at ¶ 10; Dkt. No. 33-1 at 92].

39. On August 23, 2019, Dr. Bomar left his employment at SISP. [Dkt. No. 33-4 at ¶ 1].

40. Prior to Plaintiff's transfer to Keen Mountain Correctional Center on February 20, 2020 he was seen by medical providers on September 12, 2019, October 25, 2019, November 12 and 18, 2019, December 30, 2019 and February 13, 2020. [Dkt. No. 33-4 at ¶ 15, Dkt. No. 33-1 at 53, 55-57, 60, 94].

41. Nurse Butts dispensed medication to Plaintiff on multiple occasions during Plaintiff's incarceration at SISP. [Dkt. No. 33-3 at ¶¶ 11-25; Dkt. No. 33-1 at 205, 208, 211, 217, 229, 268-69, 274-75, 306, 310, 312-16, 318-19, 322-23, 326-27, 330-35].

42. On August 23, 2019, Nurse Butts was the 1530 pill call nurse for Plaintiff's housing unit and the medication administration record ("MAR") shows that Plaintiff was a no-show for that pill call. [Dkt. No. 33-3 at ¶¶ 26-27; Dkt. No. 33-1 at 313].

43. Nurse Butts did not provide care or treatment to Plaintiff during the 1530 pill call on August 23, 2019.

44. Nurse Walker dispensed medication to Plaintiff at multiple times during Plaintiff's incarceration at SISP. [Dkt. No. 33-6 at ¶¶ 12-25; Dkt. No. 33-1 at 211, 214-15, 217-20, 223, 229, 232-33, 241, 245, 248, 251, 253-54, 256, 258, 262, 264, 266-68, 270, 318-19, 322-23, 334].

45. On July 12, 2019 Plaintiff had a sick call encounter with Nurse Walker for chronic back pain where she attempted to refer Plaintiff to the medical provider Dr. Picio who in turn noted on the encounter form that medical referral was not needed at that time as Plaintiff was pending an appointment for epidural steroid injection. [Dkt. No. 33-6 at ¶ 26; Dkt. No. 33-1 at 117].

46. Nurse Walker did not evaluate Plaintiff on a August 26, 2019 sick call.

47. Plaintiff saw Dr. Picio on August 28, 2019. Dr. Picio went over Plaintiff's treatment history for the past three years and Plaintiff's complaints that the treatment plan had been ineffective and that a recent epidural injection on August 22, 2019 had made his pain worse. Dr. Picio gave Plaintiff a shot of Toradol, which Plaintiff states "gave him instant relief." [Dkt. No. 1 at 9].

48. Plaintiff was transferred from SISP to Keen Mountain Correctional Center on February 20, 2020. [Dkt. No. 33-5 at ¶ 2; Dkt. No. 33-4 at ¶ 2; Dkt. No. 33-3 at ¶ 2; Dkt. No. 33-6 at 2; Dkt. No. 33-1 at 66].

While much of the information in the record is undisputed, the medical records submitted by the defendants from the SISP medical unit omit and make no reference to two medical appointments that Plaintiff avers occurred that did not involve defendant Ulep, but are relevant to Plaintiff's claims against Ulep. Plaintiff states that Ulep did not "initiate" the MRI, but that he merely approved it. Plaintiff states that he saw a Dr. Boakye on July 25, 2018 and that Dr. Boakye referred Plaintiff to an orthopedist, Dr. Kalore. [Dkt. No. 38 at 6]. Plaintiff avers that Dr. Kalore examined him on February 4, 2019 and ordered the MRI, which took place on March 12,

2019. [Dkt. No. 39 at 1-2].[3] The motion for summary judgment does not mention either of these doctors and their names are not noted in the legible portion of the medical records. Plaintiff's theory is that, if not for the referral by Dr. Boakye, Plaintiff would never have known the source of his pain (stenosis) and Dr. Ulep would never have changed his regimen of prescribing ineffective pain medications and stretching exercise.

Further, Plaintiff avers that Dr. Ulep's decision making was not the result of medical judgment, but instead was driven by the cost of such a referral. Plaintiff avers that on February 15, 2017, Dr. Ulep told Plaintiff that "to see a specialist, it would have to be approved by my superiors" and "they're not going to pay to send [Plaintiff] to a specialist just because [Plaintiff was] complaining of back pain. When you lose mobility in your legs, that may require a referral." [Dkt. No. 1 at 3; see also Dkt. No. 38 at 6]. Approximately a month later, on March 20, 2017, Plaintiff was found lying on the floor and he was taken to the medical unit for "severe back pain and numbness in his legs." [Id. at 4]. Plaintiff saw Dr. Ulep on March 22, 2017 and told Dr. Ulep that what Dr. Ulep had been doing was not working and that Plaintiff was "at times left immobilized." [Id.]. Plaintiff also avers that Dr. Ulep's refusal to send him to a specialist because of costs caused hm "prolonged pain." [Dkt. No. 39 at 3].

Plaintiff also disputes the versions of what defendants Bomar, Butts, and Walker state in their affidavits/declarations as to the events on the respective dates of their interactions.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[3] Plaintiff also averred in his complaint that it was Dr. Boakye who referred him to the orthopedist, Dr. Kalore, and that Dr. Kalore ordered the MRI and the epidural treatments. [Dkt. No. 1 at 7].

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on

the pleadings is appropriate, i.e., that no genuine issues of material fact are present for resolution.

See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The facts on which a moving party

bears the burden of proving are those which are material: materiality is dictated by "the

substantive law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once a moving party has met its burden of proof, the non-moving party must produce

specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986). A court will view the evidence and draw all reasonable

inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co.,

125 F.3d 243, 245 (4th Cir. 1997). Nevertheless, "[o]nly disputes over facts which might affect

the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." Anderson, 477 U.S. at 248.

The non-moving party may not defeat a properly supported summary judgment motion

by simply substituting the "conclusory allegations of the complaint or answer with conclusory

allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This

applies even where the non-moving party is a pro se prisoner. Campbell-El v. Dist. of Columbia,

874 F. Supp. 403, 406-07 (D.C. 1994); see also Local Civil Rule 7(K)(3) (to defeat a dispositive

motion, a pro se party "must identify all facts stated by the moving party with which the pro se

party disagrees and must set forth the pro se party's version of the facts by offering affidavits ...

or by filing sworn statements....").[4] Unsupported speculation is not enough to withstand a motion

---

[4] "Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing Fed. R. Civ. P. 56(e)). Affidavits must "be made on personal knowledge, set out facts admissible in evidence, and show that the affiant is competent to testify on the matters

for summary judgment. See Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir.

1986). Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion

for summary judgment; the dispute must be both "material" and "genuine," meaning that it

"might affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249

F.3d 259, 265 (4th Cir. 2001) (emphasis omitted).

## II. ANALYSIS

An Eighth Amendment claim relating to medical care in prison requires a plaintiff to

"allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious

medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Thus, a plaintiff must allege two

distinct elements to support a claim. First, he must allege a sufficiently serious medical need that

"has been diagnosed by a physician as mandating treatment or one that is so obvious that even a

lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d

225, 241 (4th Cir. 2008).

Second, a plaintiff must allege that the defendant was deliberately indifferent to his

serious medical need. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere

negligence or even malpractice is not sufficient to state an Eighth Amendment violation. See

Estelle, 429 U.S. at 106. Instead, "an official acts with deliberate indifference if he had actual

knowledge of the prisoner's serious medical needs and the related risks, but nevertheless

disregarded them." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). Significantly, a

prisoner's disagreement with medical personnel over the course of his treatment is inadequate to

state a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

---

stated." Harris v. Mayor & City Council of Baltimore, 429 F. App'x 195, 198 n.5 (4th Cir. 2011). Additionally,
"summary judgment affidavits cannot be conclusory . . . or based upon hearsay." Evans, 80 F.3d at 962.

Delay of, or interference with, medical treatment can also amount to deliberate indifference. See Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The Fourth Circuit, however, has held that there is no Eighth Amendment violation

> unless "the delay results in some substantial harm to the patient," such as a "marked" exacerbation of the prisoner's medical condition or "frequent complaints of severe pain." See Webb v. Hamidullah, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis added); see also Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)).

Formica, 739 F. App'x at 755 (4th Cir. 2018). Substantial harm may also be "a lifelong handicap or permanent loss.'" Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Corr. Inst. Inmate v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." Id. at 758 (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)) (emphasis added).

It is evident from a review of the evidence that there are disputes of fact with regard to Plaintiff's claims of deliberate indifference, and that those facts are material.

*A. Dr. Ulep: Pain Treatment*

Dr. Ulep seeks summary judgment arguing that he treated Plaintiff and saw him repeatedly during his time at SISP. Dr. Ulep, however, had ruled out scoliosis as the possible source of the pain in 2016 and an MRI was not ordered until 2019. In between, Dr. Ulep conducted tests in 2017 (EMG and NCS) "that were reported as normal with no electrophysiological evidence of peripheral neuropathy or left lumbosacral radiculopathy." [Dkt. No. 33-1 at ℙ 13]. Thereafter, Plaintiff's treatment plan included the same pain medications and stretching exercises that Plaintiff repeatedly informed Dr. Ulep were ineffective.

13

Plaintiff's treatment plan did not change until after the MRI on March 12, 2019. Dr. Ulep's affidavit notes that he acted "expeditiously" after the MRI. [Dkt. No. 33 at 15].[5] Neither his affidavit nor his argument, however, address the three-year delay in ordering an MRI, which disclosed that the source of Plaintiff's lower back pain was stenosis. Further, Dr. Ulep does not explain the sudden change in the course of treatment that he had been pursuing (pain medications, mostly over the counter, and stretching exercises) for the prior three years. See Perry v. Meade, 728 F. App'x 180, 182 (4th Cir. 2018) (plaintiff's allegations that he repeatedly informed defendants that their treatment plan was ineffective and that his bleeding and pain had worsened "are sufficient to plausibly allege the subjective element of a deliberate indifference claim") (citing Cesal v. Moats, 851 F.3d 714, 723 (7th Cir. 2017); White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)); see also Abraham v. McDonald, 493 F. App'x 465, 466-67 (4th Cir. 2012) (vacating grant of summary judgment because "delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain" and plaintiff's reports of chronic and serious pain" created a "genuine issue of fact as to whether Abraham did, in fact, suffer such harm."); see also De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013) (holding that, even if defendants "provided [plaintiff] with some treatment

---

[5] The Seventh Circuit encountered a similar case in which a doctor had refused reasonable requests for medical treatment and persisted in a course of treatment that had proved to be ineffective. Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005) (vacating a grant of summary judgment because continuing to treat severe vomiting with antacids over three years created a material fact issue of deliberate indifference).

> The fact that the endoscopy, when finally performed, did lead to successful treatment makes it all the more obvious that Dr. Daley and the other medical staff should have responded earlier to Greeno's requests for further testing. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (Eighth Amendment violated when authorities expose inmates to "'undue suffering'" by denying reasonable requests for medical treatment); White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990) (Eighth Amendment claim stated with allegations of multiple instances when prison doctor "insisted on continuing courses of treatment that the doctor knew were painful [or] ineffective").

Greeno, 414 F.3d at 655.

. . . , it does not follow that [defendants] have necessarily provided constitutionally adequate treatment").

Plaintiff responds with averments that, if not for other doctors intervening by happenstance, Plaintiff would never have been referred to an orthopedist and had the MRI that discovered his stenosis. Plaintiff also avers that Dr. Ulep's decision not to pursue an MRI was the result of the cost of such a referral. See, supra at 9-10. While the "cost of treatment alternatives" is a permissible factor to consider when "determining what constitutes adequate, minimum-level medical care . . . . medical personnel cannot simply resort to an easier course of treatment that they know is ineffective." Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006) (citations omitted).

> It is an unfortunate fact of modern life that cost considerations must enter into the equation for virtually every person seeking medical treatment, not just inmates. We note that *the Eighth Amendment does not forbid prison officials from considering cost in determining the appropriate course of treatment so long as the treatment does not put the prisoner at risk of serious injury and the decision was not made with deliberate indifference. It only becomes unacceptable if prison officials make health care decisions solely upon cost considerations without any medical rationale.*

Taylor v. Barnett, 105 F. Supp. 2d 483, 489 (E.D. Va. 2000).

Plaintiff does not simply disagree with Dr. Ulep's course of treatment, as Dr. Ulep suggests in his motion for summary judgment, Plaintiff told Dr. Ulep that the treatment that Dr. Ulep had been prescribing (over-the-counter medications and stretching) for three years was ineffective and Plaintiff sought relief from the pain that he had suffered during that period. Under these circumstances, a reasonable juror could determine either or both (i) that Dr. Ulep decided on a course of treatment solely based upon cost considerations, or (ii) that Dr. Ulep failed to pursue a different course of treatment for three years after Plaintiff informed Dr. Ulep that the prescribed course of treatment of ineffective. A failure to investigate Plaintiff's diagnosis or

15

modify Plaintiff's treatment plan over a three-year period, during which Plaintiff repeatedly complained that the treatment was ineffective, may constitute deliberate indifference and go beyond mere medical malpractice.  Indeed, the Fourth Circuit has described a hypothetical scenario, similar to the facts here, as not being constitutionally adequate.  In De'lonta, the Fourth Circuit imagined a scenario in which "prison officials prescribe a painkiller to an inmate who has suffered a serious injury from a fall, but that the inmate's symptoms, despite the medication, persist to the point that he now, by all objective measure, requires evaluation for surgery." De'lonta, 708 F.3d at 526.  The Fourth Circuit stated that prison officials would not be "immunized from constitutional suit" by the fact that they provided a painkiller instead of evaluating the prisoner for surgery. Id. Other courts have similarly held that persisting in a course of treatment known to be ineffective may constitute deliberate indifference.  See Arnett v. Webster, 658 F.3d 742, 752 (7th Cir. 2011) (finding that plaintiff had a claim for deliberate indifference against a doctor who "persisted in a course of treatment" that was "known to be ineffective").[6]

So too, here, Dr. Ulep is not immunized from suit for his failure to modify his treatment or obtain an MRI for three years by the fact that he prescribed over-the-counter pain medications and stretching exercises.  On this record, Dr. Ulep persisted in a course of treatment that Plaintiff told Dr. Ulep was ineffective and these facts are enough for Plaintiff's claim to survive Dr. Ulep's motion for summary judgment.  Although deliberate indifference requires that a prison official disregard a risk to inmate health or safety, the prolonged period of Plaintiff's pain in the

---

[6] See also Greeno v. Daley, 414 F.3d 645, 654 (7th Cir. 2005) (reversing grant of summary judgment where defendant "failed to respond to Greeno's persistent requests for a bland diet or acknowledge that the Maalox was not giving him any relief"); Smego v. Mitchell, 723 F.3d 752, 758 (7th Cir. 2013) ("A physician is deliberately indifferent when he persists in an ineffective treatment – and prescribing painkillers that cause a patient to experience pain certainly meets this standard – for a serious condition.");

fact of ineffective treatment and Dr. Ulep's disregard for the ineffectiveness of that treatment may meet that standard.  See Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) ("An official is deliberately indifferent … when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'").[7]  It will be for a jury to decide whether Dr. Ulep's actions constitute deliberate indifference.  Accordingly, Dr. Ulep's motion for summary judgment with respect to this claim must be denied.

   *B. Dr. Ulep: Shoe Lift*

   The undisputed facts indicate that Plaintiff requested a shoe lift on August 19, 2016 but refused to wait to have x-rays related to that request taken on August 22, 2016. [Dkt. No. 33-1 at 4-5]. Dr. Ulep saw Plaintiff on November 3, 2016 and inquired as to the status of the x-rays that Dr. Ulep had ordered on August 19, 2016 which had yet to be completed. [Dkt. No. 33-5 at ¶ 8; Dkt. No. 33-1 at 6-7]. The x-rays were subsequently taken on November 16, 2016. [Dkt. No. 33-5 at ¶ 9; Dkt. No. 33-1 at 151]. Plaintiff was next seen on January 19, 2017 by another medical provider who prescribed the shoe lift (inserts). [Dkt. No. 33-1 at 8]. On April 10, 2018 Plaintiff received a heel lift for his right-sided leg length discrepancy from physical therapy. [Dkt. No. 33-5 at ¶ 20; Dkt. No. 33-1 at 135-36, 158]. Plaintiff alleges that Dr. Ulep was deliberately indifferent because Dr. Ulep did nothing to "secure" Plaintiff a shoe lift after on was requested. [Dkt. No. 1 at 10].

   The record, however, shows that Dr. Ulep ordered x-rays, but that Plaintiff refused to wait for the x-rays in August 2016. In November 2016, Dr. Ulep noticed the x-rays had not been done (due to Plaintiff's refusal), and Plaintiff eventually received the shoe lift. Despite the delay,

---

[7] To meet his burden, Plaintiff must show that Dr. Ulep "had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018).

Plaintiff fails to allege that he experienced any substantial harm and the records reflect none.[8]

Accordingly, Dr. Ulep is entitled to summary judgment on the "shoe lift" portion of the

deliberate indifference claim because, on this summary judgment record, no reasonable juror

could find that Dr. Ulep acted with deliberate indifference with respect to the request for a shoe

lift.

*C. Dr. Ulep: Lower Bunk Referral*

Plaintiff alleged in his complaint that Dr. Ulep refused to issue a referral for a lower bunk

"citing the convenience of the institution [was] more important than plaintiff's health." [Dkt. No.

1 at 10]. In support of his motion for summary judgment, Dr. Ulep avers that he did not

recommend "a bottom bunk because examinations revealed Plaintiff had a normal gait without

encumbrance, so a bottom bunk accommodation was not warranted in my opinion." [Dkt. No.

33-5 at ¶ 34]. In response, Plaintiff avers that Dr. Ulep saw him "on multiple occasions in the

SISP medical department in extreme pain, [with an] impaired ability to walk." [Dkt. No. 39 at 1].

Plaintiff thus merely disagrees with Dr. Ulep regarding whether Plaintiff's gait was effected by

Plaintiff's back pain and whether a lower bunk referral would assist Plaintiff.  Such

disagreements cannot establish a deliberate indifference claim. See Wright, 766 F.2d at 849.

Here, Dr. Ulep considered Plaintiff's request, Plaintiff was examined by Dr. Ulep and other

providers who determined that Plaintiff had an normal gait, and therefore denied Plaintiff's

request.  Plaintiff's disagreement with Dr. Ulep's assessment does not mean that Dr. Ulep's

actions rise to the "level of recklessness required to succeed on a claim of deliberate

indifference."  Pennington v. Taylor, 343 F. Supp. 2d 508 (E.D. Va. 2004) (granting summary

---

[8] Indeed, the records indicate that Plaintiff turned the heel lift back into the VDOC on May 8, 2018, approximately a month after it was issued. [Dkt. No. 33-1 at 158].

judgment in favor of defendants on a claim regarding failure to provide a lower bunk).

Accordingly, Dr. Ulep's motion for summary judgment on the "lower bunk referral" portion of

the deliberate indifference claim must be granted.

### D. Dr. Bomar

Plaintiff's claims against Dr. Bomar also relate to Plaintiff's back pain.  Again, when

faced with a three-year record of ineffective treatment protocols for Plaintiff's back pain, Dr.

Bomar chose to follow the same protocol.  As the Fourth Circuit recognized in De'lonta, prison

officials are not "immunized from constitutional suit" by the fact that they provided a painkiller.

See 708 F.3d at 526.  Moreover, Plaintiff's averments regarding his interactions with Dr. Bomar

conflict with Dr. Bomar's affidavit such that genuine issues of material fact preclude summary

judgment.[9]  Plaintiff also names other SISP employees who were present during Plaintiff's July

17, 2019 interaction with Dr. Bomar and seeks leave to conduct discovery to obtain documents

and sworn testimony from them in support of the facts that he alleges regarding Dr. Bomar's

deliberate indifference. [Dkt. Nos. 39 at 3; 40 at ¶ 13].[10]  Thus, genuine issues of material fact

exist as to Dr. Bomar's interactions with Plaintiff and, on this summary judgment record, a

---

[9] Plaintiff avers that during the medical appointment he started to discuss his medical condition and Dr. Bomar responded, "What the F--- do you want me to do?" [Dkt. No. 39 at ¶ 18]. Plaintiff then asked to be referred to an orthopedist and Dr. Bomar responded "I'm sick of y'all coming over here with this s---," and directed the guard to return Plaintiff to his cell. [Id.]. In his affidavit, Dr. Bomar denies that he used expletives when he saw Plaintiff on July 17, 2019 and that the encounter "ended because Plaintiff refused to provide any appropriate responses to my questions and became argumentative and belligerent." [Dkt. No. 33-4 at ¶ 8].

[10] The Fourth Circuit has recently noted that

> Under Rule 56(d), a litigant opposing summary judgment may request time for discovery - or deferral or denial of summary judgment altogether - when he "cannot present facts essential to justify [his] opposition." See Fed. R. Civ. P. 56(d). As we have explained, relief under Rule 56(d) is "broadly favored and should be liberally granted in order to protect nonmoving parties from premature summary judgment motions," McCray v. Md. Dep't of Transp., 741 F.3d 480, 484 (4th Cir. 2014) (internal quotation marks omitted)…."

Pledger v. Lynch, ___ F.4th ___, ___, 2021 U.S. App. LEXIS 21587, *33-34 (4th Cir. July 21, 2021).

reasonable juror could find that Dr. Bomar was acted with deliberate indifference.  Accordingly, the motion for summary judgment with respect to the claims against Dr. Bomar must be denied.

    *E. Nurse Butts and Nurse Walker*

    With respect to the remaining claims against the Nurse Defendants, Plaintiff's allegations rest on much more limited interactions.  The allegations against Nurse Butts stem from a pill call on August 23, 2019 and the allegations against Nurse Walker stem from a sick call on August 26, 2019.  Based on these limited interactions, a reasonable juror could not find in favor of Plaintiff with respect to these defendants.

    Plaintiff avers that he suffered pain from his epidural injection and informed Nurse Butts on August 23, 2021.  Plaintiff further asserts that Nurse Butts told Plaintiff that Plaintiff was "just going to have to wait until Monday" despite Plaintiff informing Nurse Butts that it was an "emergency." [Dkt. No. 39 at ¶ 26].  This interaction, as described by Plaintiff, presents no more than a disagreement over a course of treatment and whether Plaintiff's complaints constituted an emergency.  See Wright, 766 F.2d at 849.  Moreover, Plaintiff does not allege any facts that indicate that the delay in treatment – Plaintiff was treated by Dr. Picio on August 28, 2019 – aggravated or exacerbated his medical condition.  See Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006) (holding that a delay in medical care must cause "substantial harm" to be a constitutional violation); McQueen v. Revell, No. 2:01cv88, 2001 U.S. Dist. LEXIS 17155, *11-12 (N. D. Tex. Oct. 22, 2001); see, e.g., McKenzie v. Magee, No. 94-3260-RDR, 1997 U.S. Dist. LEXIS 13536, *7-8, 1997 WL 542938 (D. Kan. Aug. 4, 1997) (dismissing claim of deliberate indifference because there was "no evidence plaintiff's condition required immediate attention" and "no evidence [plaintiff] suffered substantial harm from the alleged delay").  Accordingly, on this summary judgment record, no reasonable juror could find that Nurse Butts acted with

deliberate indifference to a serious medical need and, therefore, summary judgment must be granted in favor of Nurse Butts.

Similarly, the allegations against Nurse Walker are based on a limited encounter on August 26, 2019. Plaintiff avers that he told Nurse Walker that he was in "severe pain and needed urgent help," and that Nurse Walker responded that she had just seen him "a couple of weeks before." [Dkt. No. 39 at ¶ 31]. Again, Plaintiff's allegations appear to be a dispute about the urgency necessary to treat Plaintiff's complaints and whether Plaintiff required treatment. Such disagreements cannot form the basis for a deliberate indifference claim. Here too, Plaintiff fails to aver that the delay in treatment aggravated or exacerbated his medical condition. See, e.g., Easter, 467 F.3d at 464. Plaintiff was seen by Dr. Picio only 2 days after Nurse Walker is alleged to have refused to treat Plaintiff and Plaintiff avers that Dr. Picio's prescription of Toradol relieved his pain. Accordingly, on this summary judgment record, no reasonable juror could find that Nurse Walker acted with deliberate indifference to a serious medical need and, therefore, summary judgment must be granted in favor of Nurse Walker.

### III. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted with respect to the portion of the claim against Dr. Ulep regarding the shoe lift and lower bunk referral and with respect to the claims against Nurse Butts and Nurse Walker. The motion for summary judgment is denied with respect to the remaining claims against defendants Dr. Ulep and Dr. Bomar. An appropriate Order will issue alongside this Memorandum Opinion.

Entered this _24th_ day of ___August___, 2021.

Alexandria, Virginia

/s/

T. S. Ellis, III
United States District Judge

21